No. 98-713

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 289

297 Mont. 55

990 P.2d 767

WESTERN ENERGY COMPANY,

Petitioner and Respondent,

v.

THE STATE OF MONTANA,

DEPARTMENT OF REVENUE,

Respondents and Appellants.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brendan R. Beatty, Montana Department of Revenue;

Helena, Montana

For Respondent:

John Alke, Hughes, Kellner, Sullivan & Alke; Helena, Montana

Submitted on Briefs: July 1, 1999

Decided: November 26, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶

    Western Energy Company ("WECO"), petitioned the District Court for the First Judicial District of Lewis and Clark County to review the State Tax Appeal Board's decision upholding the Department of Revenue's method of calculating WECO's coal production taxes. The District Court concluded that the Department's method of calculation misapplied the law and ordered that WECO owed no additional coal production taxes. The Department appeals from the order of the District Court. We affirm the District Court.

2. ¶ The sole issue on appeal is whether the District Court erred when it concluded that WECO's application of the incentive tax credit did not frustrate the plain language of § 15-35-203, MCA.

FACTUAL BACKGROUND

3. ¶ In 1985 the Montana Legislature passed the New Coal Production Incentive Tax Credit Act of 1985, §§ 15-35-201, et seq., MCA, to encourage new sales of Montana coal. The Act provided a coal severance tax credit to producers of Montana coal on new or incremental sales. The Act required coal producers to reduce the "delivered price" of coal sold to qualified purchasers by an amount equal to the credit received, shifting the benefit of the tax credit to the purchaser in the form of a lower price for Montana coal. "Delivered price" is not defined in the Act. In accordance with the Act, WECO reduced its base price of coal on its new or incremental sales by the amount of the credit received. WECO then calculated its coal production taxes owed for the new or incremental sales based on the reduced sales price, and added those taxes to the base price to arrive at the total cost to its purchaser.

4. ¶ In 1992, the Montana Department of Revenue conducted an audit of WECO for the years 1989 through 1991. The Department claimed that additional coal production taxes were due for WECO's coal produced during the period from 1989 through 1991, pursuant to the provisions of the New Coal Production Incentive Tax Credit Act of 1985, §§ 15-35-201, et seq., MCA. The additional coal production taxes included the coal severance tax, the gross proceeds tax and the resource indemnity trust tax. In arriving at the assessed deficiencies in the coal production taxes, the Department calculated WECO's coal production taxes due for new or incremental sales after adding the tax credit amount back to the base sales price and then by deducting the tax credit from the total sales price. The Department's method of calculating WECO's taxes resulted in a greater tax liability than was reported by WECO based on its method because coal production taxes are computed on the contract sales price which is the total sales price reduced by taxes paid and the Department's method required WECO to compute its taxes based on the total base price before the tax incentive credit was applied.

5. ¶ In 1994, WECO appealed the Department's tax deficiency assessment to the State Tax Appeal Board. In June 1997 following a hearing, the State Tax Appeal Board upheld the Department's assessment of WECO's tax deficiencies for the years 1989 to 1991. In August 1997, WECO petitioned the District Court for judicial review of the State Tax Appeal Board's decision. On September 9, 1998, the District Court

reversed the decision of the State Tax Appeal Board. The District Court concluded that WECO's application of the tax incentive credit did not frustrate the plain language of § 15-35-203(5), MCA, and declared that WECO did not owe any additional coal production taxes for the time period in question.

## STANDARD OF REVIEW

6. ¶ We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Nimmick v. State Farm Mut. Auto. Ins. Co.* (1995), 270 Mont. 315, 319, 891 P.2d 1154, 1156.

## DISCUSSION

7. ¶ Did the District Court err when it concluded that WECO's application of the incentive tax credit did not frustrate the plain language of § 15-35-203, MCA?

8. ¶ Section 15-35-203(5), MCA, provides as follows:

Each coal mine operator *must reduce the delivered price* of coal sold to each qualified purchaser *by an amount equal to the credit received* on incremental production sold to that purchaser.

(Emphasis added.) The District Court concluded that this section was susceptible to a number of different constructions and that since WECO's construction did not frustrate the plain language of § 15-35-203, MCA, WECO's method was a correct interpretation of the statute.

9. ¶ The incentive tax credit's impact on the contract sales price is extremely important because all coal production taxes are calculated and assessed on the contract sales price of coal. The Department asserts that because § 15-35-102(7), MCA, defines "contract sales price" to mean "the price of coal extracted and prepared for shipment f.o.b. mine, excluding that amount charged by the seller to pay taxes paid on production . . .", and § 15-35-102(16), MCA, defines "taxes paid on production" as "any tax paid to the federal, state or local governments upon the quantity of coal produced . . .", that WECO's reduction of the base sale price by the tax credit was improper. The Department argues that the statutes clearly provide that when

calculating the contract sales price, a mine operator may subtract from the purchase price only those taxes paid on production.

10. ¶ We have previously stated that when a taxing statute is susceptible to two constructions, doubt should be resolved in the favor of the taxpayer. *See Anaconda Co. v. Department of Revenue* (1978), 178 Mont. 254, 258, 583 P.2d 421, 423. Moreover, tax statutes are to be strictly construed against the taxing authority and in favor of the taxpayer. *Canbra Foods Ltd. v. Montana Dep't of Revenue* (1996), 278 Mont. 368, 373, 925 P.2d 855, 857-58.

11. ¶ When we interpret a statute, our objective is to implement the objectives the legislature sought to achieve. *Montana Wildlife Fed'n v. Sager* (1980), 190 Mont. 247, 264, 620 P.2d 1189, 1199. The legislative intent is to be ascertained, in the first instance, from the plain meaning of the words used. *Boegli v. Glacier Mountain Cheese Co.* (1989), 238 Mont. 426, 429, 777 P.2d 1303, 1305. If the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning controls and the Court need go no further nor apply any other means of interpretation. *Phelps v. Hillhaven Corp.* (1988), 231 Mont. 245, 251, 752 P.2d 737, 741.

12. ¶ We conclude that WECO's method of applying § 15-35-203(5), MCA, does not frustrate the statute's plain language. The statute required coal mine operators to reduce the delivered price of coal to qualified purchasers by an amount equal to the credit received, in order to lower the purchase price of Montana coal. WECO applied the credit in a manner that reduced the purchase price. Additionally, the Department's construction would provide less incentive to purchase Montana coal by minimizing the reduction in the "delivered price" of coal.

13. ¶ Therefore, we conclude that WECO's construction of § 15-35-203(5), MCA, did not frustrate the plain language of the statute. We further conclude that the District Court did not err when it reversed the decision of the State Tax Appeal Board, and held that WECO did not owe additional coal production taxes for the years 1989 through 1991. Accordingly, we affirm the decision of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.