
DA 07-0356

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 403

OMIMEX CANADA, LTD.,

      Plaintiff and Appellant,

  v.

STATE OF MONTANA, DEPARTMENT OF REVENUE,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2004-288
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          James P. Sites, Jared M. Le Fevre; Crowley, Haughey, Hanson, Toole & Dietrich, PLLP, Billings, Montana

     For Appellee:

          Charlena Toro, Special Assistant Attorney General, Helena, Montana

          David L. Ohler, Special Assistant Attorney General, Helena, Montana

     For Amicus Curiae:

          John Alke; Hughes, Kellner, Sullivan & Alke, PLLP, Helena, Montana
(for Montana Petroleum Association)

                       Submitted on Briefs:  July 9, 2008

                               Decided:  December 2, 2008

Filed:

_____

                           Clerk

District Court Judge Robert L. Deschamps, III delivered the Opinion of the Court.

¶1      Omimex Canada, Ltd. ("Omimex") appeals from the judgment of the First Judicial District Court, Lewis and Clark County, declaring that the Montana Department of Revenue ("DOR") may centrally assess Omimex's property and classify it under § 15-6-141, MCA, as class nine property.  We reverse.

¶2      Omimex raises several issues on appeal, which we consolidate and restate as follows:

¶3      Did the District Court err in considering Omimex's operating characteristics in concluding Omimex was "operating a single and continuous property operated in more than one county or more than one state" and is, therefore, subject to central assessment pursuant to § 15-23-101, MCA?

¶4      Did the District Court err in concluding all of Omimex's property should be centrally assessed pursuant to § 15-23-101, MCA, and classified as class nine property pursuant to § 15-6-141, MCA?

¶5      Did the District Court err in concluding Omimex did not meet its burden of proof for its equalization and equal protection challenges?

## BACKGROUND

¶6      The facts of the case are largely undisputed.  Omimex, a subsidiary of an international oil and gas corporation, owns an interest in five distinct large and scattered smaller properties in Montana.  Omimex extracts primarily natural gas from these properties.  The properties are not physically connected by Omimex-owned facilities, are not dependent on one another, and may be operated independently.  Nonetheless, most of

2

the gas produced at these facilities is sold to a single buyer. The properties are supervised by a Montana-based foreman and are centrally managed out of Omimex's Texas headquarters.

¶7 The five main Omimex Montana properties are known as the Cut Bank Area properties ("Cut Bank properties"), the Shelby Area properties ("Shelby properties"), the Bowdoin properties, the Regan properties and the Battle Creek properties. These properties cover some 2.2 million acres containing approximately 1,450 wells. The wells collectively produce over 10 million cubic feet of natural gas a day and slightly less than 600 barrels of oil a day. Each property has gathering lines that, at low pressure, move untreated gas or oil from Omimex's and often other parties' individual wells to central collecting points for further transmission in large high pressure lines.

¶8 The collection point for the Cut Bank properties includes an Omimex plant where gas is treated to remove impurities and by-products before the gas is moved on in a large high-pressure line to a junction with another entity's transmission pipeline. Some of the properties cover more than one county (Cut Bank and Shelby properties), and at least one (Bowdoin properties) crosses the international border into Canada. The Regan properties produce only oil, which is sold to a ground transporter. While Omimex produces and sells some oil and other petroleum products, its main focus in Montana is natural gas. The parties and the District Court consistently considered it to be a natural gas company.

¶9 Most Omimex gas is sold to an entity known as WPS Energy Services, Inc. ("WPS"). Ownership of the gas is transferred to WPS at various locations where there are junctions between Omimex pipelines and transmission pipelines owned by third party

entities. In at least three of the properties (Shelby, Bowdoin, and Battle Creek) Omimex owns and operates high pressure transmission lines that carry accumulated gas owned by Omimex. For a fee, other entities may utilize the Omimex lines to convey their product to junctions with pipelines owned by third parties. At these junctions, the ownership of Omimex gas is transferred to WPS or another buyer, all of whom then transport the gas to distant markets. Omimex has a permit to import and export gas and owns a right to transport gas on some of the third party pipelines but not all of them. WPS transports the Omimex gas it purchases in cross-Canadian pipelines owned by other entities. WPS eventually distributes and sells the gas to consumers in other parts of North America.

¶10 Four of the five Omimex Montana properties (Cut Bank, Shelby, Bowdoin, and Regan properties) were at one time owned and operated by the former Montana Power Company ("MPC") or one of its subsidiaries. Two of the former MPC properties, the Cut Bank and Shelby properties, were a part of the integrated natural gas production and distribution ("wellhead to burner tip") system operated by the MPC until the mid-1990s prior to that company's deregulation and ultimate piecemeal divestiture of its assets.

¶11 In Montana, property is assessed for taxation by DOR. Most property is assessed county by county by DOR personnel. This is called "local assessment." Exceptions include the statewide or "central" assessment of property owned in multiple counties or states by certain owners as defined by statute. Section 15-23-101, MCA, provides, "[t]he department shall centrally assess each year . . . (2) property owned by a corporation or other person operating a single and continuous property operated in more than one county or more than one state, including, but not limited to . . . natural gas or oil pipelines . . . ."

4

¶12 The Cut Bank, Shelby and, apparently, the Regan properties were centrally assessed by the DOR when these properties were owned and operated by the MPC. The Bowdoin properties, while owned by a MPC subsidiary, were locally assessed because the gas from this property was sold differently than the rest of MPC's gas. The Battle Creek properties were not a part of the MPC system and were previously assessed locally.

¶13 After deregulation in 1997, the MPC properties were transferred by MPC to a subsidiary named Entech. In 2000, Entech sold these properties and others to PanCanadian Energy Resources, Inc., later called EnCana. Along the way EnCana also acquired the Battle Creek properties. In 2003, Omimex purchased the properties involved in this case from EnCana, while other former MPC properties owned by EnCana were sold to other buyers.

¶14 The DOR has been centrally assessing the Omimex properties because some properties cross county lines and because all are operated by Omimex as a functional single entity or "unity of operation." Omimex does not contest DOR's valuation but has advanced several arguments in support of its contention that the properties should be assessed locally, not centrally. Because Omimex's properties are centrally assessed, DOR has classified the property as class nine property under § 15-6-141, MCA, which is taxed at a rate of 12%. Omimex contends that its properties should be locally assessed and classified as class eight properties under § 15-6-138, MCA, which are taxed at a rate of 3%.

¶15 The District Court agreed with the DOR and upheld the central assessment and class nine classification. Omimex appeals.

## STANDARD OF REVIEW

¶16 The standard of review for issues of law is de novo. *Citibank (South Dakota) N.A. v. Dahlquist,* 2007 MT 42, ¶ 8, 336 Mont. 100, ¶ 8, 152 P.3d 693, ¶ 8. The standard of review of any disputed issues of fact is clearly erroneous. *Leichtfuss v. Dabney,* 2005 MT 271, ¶ 20, 329 Mont. 129, ¶ 20, 122 P.3d 1220, ¶ 20.

## DISCUSSION

¶17 Omimex does not dispute the DOR's valuation of its property. The fundamental question in this case is whether Omimex's property should be taxed at a rate of 12% under § 15-6-141, MCA, or at a rate of 3% under § 15-6-138, MCA.

¶18 Regardless of whether Omimex's property is centrally or locally assessed, its tax rate class is determined by the application of the physical attributes of Omimex's Montana properties to the terms of the property classification statutes, §§ 15-6-138 and -141, MCA.

¶19 Pursuant to § 15-6-138, MCA,

(1) Class eight property includes:

.   .   .

(c) all oil and gas production machinery, fixtures, equipment, including pumping units, oil field storage tanks, water storage tanks, water disposal injection pumps, gas compressor and dehydrator units, communication towers, gas metering shacks, treaters, gas separators, water flood units, gas boosters, and similar equipment that is skidable, portable, or movable, tools that are not exempt under 15-6-219, and supplies except those included in class five;

6

. . .

        (n) all other property that is not included in any other class in this part, except that property that is subject to a fee in lieu of a property tax.

. . .

        (4) Class eight property is taxed at 3% of its market value.

¶20    Pursuant to § 15-6-141, MCA,

        (1) Class nine property includes:

. . .

        (b) allocations for centrally assessed natural gas companies having a major distribution system in this state; and
        (c) centrally assessed companies' allocations except:
        (i) electrical generation facilities classified under 15-6-156;
        (ii) all property classified under 15-6-157;
        (iii) all property classified under 15-6-158 and 15-6-159;

. . .

        (2) Class nine property is taxed at 12% of market value.

¶21    The applicable rules of statutory construction to be used to construe these statutes are straightforward. When construing statutes, the court "is simply to ascertain and declare what is in terms or in substance contained therein . . . ." Section 1-2-101, MCA. The specific must prevail over the general. Section 1-2-102, MCA. Related to this is the canon of statutory construction known as *expressio unius est exclusio alterius* (the expression of one thing [in a statute] implies the exclusion of another). S*ee e.g. Dukes v. City of Missoula,* 2005 MT 196, ¶ 15, 328 Mont. 155, ¶ 15, 119 P.3d 61, ¶ 15 (applying the canon to enforcement of the Montana Scaffold Act); *Harris v. Smartt,* 2003 MT 135,

7

¶ 17, 316 Mont. 130, ¶ 17, 68 P.3d 889, ¶ 17 (applying the canon to the Montana Constitution); *Mitchell v. University of Montana*, 240 Mont. 261, 265, 783 P.2d 1337, 1339 (1989) (applying the canon to the statutory definition of "local government units"). If the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning controls and the Court need go no further. *Western Energy Co. v. State, Dept. of Rev.*, 1999 MT 289 ¶ 11, 297 Mont. 55, ¶ 11, 990 P.2d 767, ¶ 11. Finally, tax statutes are to be strictly construed against the taxing authority and in favor of the taxpayer. *Western Energy*, ¶ 10.

¶22 Prior to 1999, § 15-6-141, MCA, contained not only the provisions of subsection (1)(b) regarding centrally assessed natural gas companies with major distribution systems, but also contained a separate provision under the exception provisions of subsection (1)(c). This provision was former § 15-6-141(1)(c)(i), MCA, until it was amended by Chapter 556, 1999 Session Laws. Before the amendment, the pertinent parts of the statute read: "(1) Class nine property includes . . . (b) allocations for centrally assessed natural gas companies having a major distribution system in this state; and (c) centrally assessed companies' allocations except: (i) electric power and natural gas companies' property . . . ." The 1999 amendments to (1)(c)(i) substituted "electrical generation facility property included in class thirteen" for "electric power and natural gas companies' property." Subsequent amendments modified the provision into its current form.

¶23 The Montana Legislature's intent in enacting the "Electrical Generation Tax Reform Act," Section 1, Chapter 556, 1999 Montana Session Laws, was to reform

8

taxation of electrical generation facilities in the aftermath of the restructuring of the electric utility industry following its 1997 deregulation. The natural gas industry is not mentioned anywhere within Chapter 556, 1999 Montana Session Laws. From this we conclude that the 1999 amendments to § 15-6-141, MCA, were not intended to alter the status quo regarding natural gas companies' tax classification.

¶24 Under the statute as it existed prior to the 1999 amendment, it was clear that the legislature intended to exempt centrally assessed natural gas companies from class nine *unless* the companies had a major distribution system in the state. Absent any statement of legislative intent to the contrary, this remains the rule.

¶25 Tax statutes must be construed in favor of the taxpayer. The explicit inclusion of "centrally assessed natural gas companies having a major distribution system in this state" implies the exclusion of all other centrally assessed natural gas companies under the *expressio unius est exclusio alterius* canon. The specific description of "centrally assessed natural gas companies having a major distribution system in this state" in § 15-6-141(1)(b), MCA, prevails over the general catch-all provision for "centrally assessed companies" in § 15-6-141(1)(c), MCA. If the legislature had intended to place all centrally assessed natural gas companies into class nine, it had two simple ways to do so: it could have deleted § 15-6-141(1)(b), MCA, altogether or, if for some reason the legislature wanted to single out centrally assessed natural gas companies to be certain they would all be placed in class nine, it could have deleted the qualifier "having a major distribution system in this state." It did not do either.

¶26 Assuming, arguendo, that the District Court was correct in upholding DOR's central assessment of Omimex, and that Omimex is properly a "centrally-assessed natural gas company," it still does not have a major distribution system in this state as required by § 15-6-141(1)(b), MCA. Omimex's properties are manifestly designed not to distribute, but rather to accumulate natural gas from hundreds of individual wells to central points where the gas is commingled and delivered to a single buyer. It is the buyer who then transports the gas to distant locations where it is finally distributed to consumers. Therefore, Omimex's properties, regardless of whether they are centrally or locally assessed, should be classified as § 15-6-138(1)(c) or (n), MCA, class eight property subject to a 3% tax rate.

¶27 For the foregoing reasons it is not necessary to address whether the District Court was in error when it upheld the central assessment of Omimex's property since where the property is assessed does not make any difference for its classification. Similarly, since we hold that the District Court did err in upholding the DOR class nine classification, it is not necessary to address Omimex's due process and equal protection arguments concerning that classification. Because the District Court erred in determining that the properties should be classified as class nine properties under § 15-6-141, MCA, we reverse and remand for entry of an amended judgment classifying the Omimex properties as class eight properties under § 15-6-138, MCA.

/S/ ROBERT L. DESCHAMPS, III
District Court Judge Robert L. Deschamps, III
sitting for Justice Brian Morris

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

/S/ JOE L. HEGEL
District Court Judge Joe L. Hegel
sitting for Justice James C. Nelson