FILED

05/23/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0474

DA 16-0474

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 122

RICHLAND AVIATION, INC.,

        Plaintiff, Appellee
        and Cross-Appellant,

    v.

STATE OF MONTANA, DEPARTMENT OF REVENUE,

        Defendant, Appellant
        and Cross-Appellee.

APPEAL FROM:    District Court of the Seventh Judicial District,
                In and For the County of Richland, Cause No. DV 14-40
                Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                David R. Stewart, Courtney Mathieson, Elizabeth M. Roberts, Special
                Assistant Attorneys General, Department of Revenue, Helena, Montana

        For Appellee:

                Jared M. Le Fevre, David C. Clukey, Crowley Fleck PLLP, Billings,
                Montana

Submitted on Briefs:  April 12, 2017

Decided:   May 23, 2017

Filed:

_____
                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Montana Department of Revenue (DOR) appeals the judgment of the Seventh Judicial District Court, which granted summary judgment in favor of Richland Aviation, Inc. (Richland Aviation), by holding that Richland Aviation is not a "scheduled airline" subject to central assessment by DOR. We affirm and state the issue as follows:

*Did the District Court err by concluding Richland Aviation was not a "scheduled airline" and therefore not subject to central assessment?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Since 1971, Richland Aviation, a company based in Sidney, Richland County, Montana, has provided on-demand flight services, operating from the Sidney-Richland Airport. Richland Aviation owns six light, twin piston engine aircraft, the largest of which is a Cessna 404 with a maximum capacity of 2,684 pounds. Richland Aviation hires out its aircraft and related services for the transport of people and goods on a contract basis. Richland Aviation does not provide scheduled or pre-set flights beyond the individual arrangements it enters with those hiring its services. As Richland Aviation explains, "[o]ne cannot walk up to the gate, view a list of set and published dates and times for flight, and purchase a ticket. Rather, use of the airplane is negotiated on a case-by-case basis and via a negotiated contract."

¶3 Richland Aviation has entered an agreement with the United Parcel Service (UPS) to pick up and deliver freight at certain locations on a routine basis. Under the negotiated agreement, the date, time, and pickup locations are determined exclusively by UPS, and all

2

flights provided by Richland Aviation pursuant to the agreement are reserved exclusively for the transport of UPS freight.

¶4      Since its inception, Richland Aviation has registered its aircraft with the Department of Transportation pursuant to the aeronautical regulation and licensing provisions in § 67-3-201, et seq., MCA.  As DOR explains, these provisions impose an aircraft registration fee in lieu of property taxes which is mutually exclusive to the system of central assessment of scheduled airlines, and which is a prerequisite to operation of the aircraft.[1] *See* § 67-3-201(1), MCA ("[A] person may not operate or cause or authorize to be operated a civil aircraft within this state unless the aircraft has an appropriate effective registration, license, certificate, or permit issued or approved by the United States government that has been registered with the department and the registration with the department is in force."). Richland Aviation's aircraft have never been centrally assessed for taxation by DOR.

¶5      In 2013, DOR sent a questionnaire to Richland Aviation and other air carriers to determine if these companies "were operating in a manner that would subject them to central assessment."  Richland Aviation returned the questionnaire, indicating that it provided air transport services under a contract with UPS.  DOR ultimately determined that Richland Aviation "performs regularly scheduled flights for UPS" and was therefore subject to centrally assessed taxes.  Richland Aviation objected and filed the instant proceeding to determine whether it was subject to the aircraft registration statutes, rather than central tax assessment.

---

[1] Br. of Appellant 2.

¶6 Because there was no statutory definition for the statutory term, "regularly scheduled flight," the District Court reasoned that the term "scheduled airline" had been rendered "statutorily undefined and ambiguous," and looked to authority from federal and sister jurisdictions to define these terms. It concluded that Richland Aviation was not a scheduled airline because it "does not hold out to the public that it operates between certain places at certain times," and granted summary judgment to Richland Aviation. DOR appeals.

## STANDARD OF REVIEW

¶7 We review de novo a district court's ruling on summary judgment, applying the criteria of M. R. Civ. P. 56(c)(3). *Citizens for a Better Flathead v. Bd. of Cnty. Comm'rs*, 2016 MT 256, ¶ 10, 385 Mont. 156, 381 P.3d 555 (citing *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839). We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *W. Energy Co. v. Mont. Dep't of Revenue*, 1999 MT 289, ¶ 6, 297 Mont. 55, 990 P.2d 767 (citing *Nimmick v. State Farm Mut. Auto. Ins. Co.*, 270 Mont. 315, 319, 891 P.2d 1154, 1156 (1995)).

## DISCUSSION

¶8 *Did the District Court err by determining that Richland Aviation was not a "scheduled airline" and therefore not subject to central assessment?*

¶9 After the District Court entered its decision in this case, and before appellate briefing was completed, we decided *Montana Department of Revenue v. Alpine Aviation, Inc.*, 2016 MT 283, 385 Mont. 282, 384 P.3d 1035. *Alpine* was a unique interlocutory

4

appeal of an adjudication of a "substantive question of law" pending before the State Tax Appeal Board, pursuant to § 15-2-305, MCA, with no factual record. *Alpine*, ¶¶ 7, 10. The purpose of that litigation was to obtain a definition of the key, but undefined, statutory term, "regularly scheduled flights," § 15-23-401(1), MCA, for purposes of its application within other provisions that require central assessment of "scheduled airlines" or "scheduled airline compan[ies]." Sections 15-23-101(3), 15-23-401(8), MCA; *Alpine*, ¶ 8. We defined "regularly scheduled flights" as "those which follow an interval according to timetables and locations predefined by the carrier and which fly regardless of whether there are passengers or freight to be carried." *Alpine*, ¶ 15. We noted that "[o]ne key concept . . . is *who* sets the flight schedule. An airline arranges a regularly scheduled flight; the customer does not." *Alpine*, ¶ 14 (emphasis in original). Given the posture of that appeal, we did not reach the ultimate question of whether Alpine Aviation was a scheduled airline subject to central assessment. *Alpine*, ¶ 10.

¶10 DOR argues that the District Court's order conflicts with *Alpine* because the District Court reasoned that the statutory terms were ambiguous and looked to foreign authority to arrive at a definition, when there is no ambiguity in the statutes. It also argues that Richland Aviation should be deemed a "scheduled airline" because it offers its services for hire by the general public and provides those services in accordance with an agreed-upon schedule, citing its contract with UPS. In answer, Richland Aviation argues that the District Court should be affirmed because its services do not constitute "regularly scheduled flights" as defined in *Alpine*. Richland Aviation argues that, even if it flies regularly under its contract

with UPS, the schedule and locations are not "predefined by the carrier," but, rather, predefined by the customer. Alternatively, Richland Aviation "invites this Court to reconsider the definition of 'regularly scheduled flights' it provided in *Alpine Aviation*, taking into account the historical, industry, technical, and peculiar meaning of the term 'scheduled.'"

¶11    "It is a basic premise of the law of taxation that the foundation for levying and assessing a tax depends upon the existence of a valid legislative act specifically designating the imposition of the tax. Nothing is taxable unless clearly authorized by statute." *Powder River Cnty. v. Mont. Dep't of Revenue*, 2002 MT 259, ¶ 40, 312 Mont. 198, 60 P.3d 357 (citing *Connick v. Judge*, 167 Mont. 357, 361, 538 P.2d 1024, 1027 (1975)); *accord N. Pac. Ry. v. Carland*, 5 Mont. 146, 200, 3 P. 134, 162 (1884); *State ex rel. Tillman v. District Ct.*, 101 Mont. 176, 181, 53 P.2d 107, 109-10 (1936); *Swartz v. Berg*, 147 Mont. 178, 182-83, 411 P.2d 736, 738 (1966) (noting tax statutes are to be interpreted "*stricti juris*," that is, "strictly construed against the taxing authorities, and in favor of the taxpayer," citing 51 Am. Jur. Taxation § 650); *Omimex Can., Ltd. v. Mont. Dep't of Revenue*, 2008 MT 403, ¶ 21, 347 Mont. 176, 201 P.3d 3 (holding "tax statutes are to be strictly construed against the taxing authority and in favor of the taxpayer").

¶12    In the briefing in this case, as in *Alpine*, the parties discuss a substantial body of general aviation law and legislative history that they would like the Court to incorporate into the analysis of the subject statutory definitions. *See Alpine*, ¶¶ 9-10. Richland Aviation here draws our attention to this "entire universe of legal authority" in the hope

6

that we will revisit the definition recently adopted in *Alpine*, particularly by importing the technical industry meaning of the term "scheduled." *See, e.g., Aircraft Owners & Pilots Ass'n v. Port Auth. of N.Y.*, 305 F. Supp. 93, 97-98 (E.D.N.Y. 1969) (distinguishing scheduled airlines, or "carriers," from "General Aviation," which "uses smaller aircraft" and "possibly reflects a shorter average haul"). However, we conclude it is unnecessary to do so in order to properly apply the Montana statutes. "[T]here is no reason for us to engage in a discussion of the legislative history to construe [a] statute when we have determined that the language of the statute is clear and unambiguous on its face." *State v. Goebel*, 2001 MT 73, ¶ 21, 305 Mont. 53, 31 P.3d 335 (citation omitted). Our reasoning in *Alpine* demonstrated that the meaning of the words chosen by the Legislature was clear on its face, as we noted that dictionary definitions of the statutory terms produced "common sense renderings." *Alpine*, ¶ 13. We realize that *Alpine* was devoid of a factual record. Nonetheless, the Legislature did not choose to employ industry terms such as "general aviation," and we need not consider them where the issue is resolved under the plain wording of the statutes.

¶13 DOR is required to centrally assess the property of "scheduled airlines." Section 15-23-101(3), MCA. A "scheduled airline company" is "any person who undertakes directly or indirectly to engage in the business of scheduled air commerce." Section 15-23-401(8), MCA. In turn, "air commerce" is "the transportation by aircraft of persons or property for hire in interstate, intrastate, or international transportation on regularly scheduled flights." Section 15-23-401(1), MCA. In *Alpine*, we defined

7

"regularly scheduled flights" as "those which follow an interval according to timetables and locations predefined by the carrier and which fly regardless of whether there are passengers or freight to be carried." *Alpine*, ¶ 15. Such flights "occur[] on a uniform or unvarying, and reoccurring, basis as preset by an airline and offered for hire to the public." *Alpine*, ¶ 14. A key element of these definitions is "*who* sets the flight schedule. An airline arranges a regularly scheduled flight; the customer does not." *Alpine*, ¶ 14 (emphasis in original).

¶14 DOR argues that the discussion in *Alpine* of "who sets the flight" is *dictum* because "[t]his Court provided no further elaboration, nor any authority upon which to rely," but DOR overlooks the unique nature of the *Alpine* appeal. *Alpine* was decided without a factual record from which to elaborate, and the opinion could be considered, under DOR's view, *obiter dictum* in its entirety, because we did not resolve the ultimate issue. More to the point, the concept of the airline arranging the flight, and not the customer, simply restates the clear meaning of the phrases "timetables and locations predefined by the carrier" and flying "regardless of whether there are passengers or freight to be carried," which are included in the definition of "regularly scheduled flights." *Alpine*, ¶ 15.

¶15 Applying these definitions here, Richland Aviation does not engage in "regularly scheduled flights" required for central assessment. Richland Aviation does not publish or otherwise predefine a schedule of flights that it offers to the public. It does not fly "according to timetables and locations predefined by the carrier." *Alpine*, ¶ 15. It flies on

8

a schedule that is arranged by the customer. Here, the customer whose contract gives rise to this litigation, UPS, sets the dates, times, and pickup locations—not Richland Aviation.

¶16 This conclusion corresponds with Montana's aircraft registration statutes. "[A]ircraft required to be registered in Montana are subject to a fee. The registration fee is *in lieu of property tax*." Section 67-3-204(1), MCA (emphasis added). However, "aircraft operated *by an airline company and regularly scheduled* for the primary purpose of carrying persons or property for hire in interstate or international transportation" are exempt from registration. Section 67-3-201(3)(c), MCA (emphasis added). As such, aircraft that are subject to the registration and fee requirements in Title 67, chapter 2, part 2, MCA, imposed in lieu of property taxes, are generally not subject to taxation by central assessment under § 15-23-101(3), MCA.

¶17 The District Court did not have the benefit of our ruling in *Alpine* when it issued its opinion. Even though it employed a different analysis, concluding the statutes were ambiguous and looking to foreign authority, the District Court nonetheless reached the correct result.

¶18 Affirmed.

/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER