No. 05-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 82

IN RE: LEE ORIO ARCHER and VICKI BAIRD ARCHER

Debtors.

ORIGINAL PROCEEDING: Certified Question from The United States
Bankruptcy Court for the District of Montana
Hon. Ralph B. Kirscher, presiding, Cause No. 04-63593-7

COUNSEL OF RECORD:

For Debtors:

Howard C. Greenwood, Attorney at Law, Hamilton, Montana

For Chapter 7 Trustee:

Richard J. Samson; Christian, Samson, Jones & Chisholm,
Missoula, Montana

For Amicus Curiae:

Lawrence A. Anderson, Attorney at Law, Great Falls, Montana
(for Montana Trial Lawyers Association)

Submitted on Briefs: February 14, 2006

Decided: April 25, 2006

Filed:

_____
Clerk

Chief Justice Gray delivered the Opinion of the Court.

¶1 In this case, we address a question certified to us pursuant to Rule 44, M.R.App.P., by the United States Bankruptcy Court for the District of Montana. The question is:

> May a debtor claim an exemption pursuant to § 25-13-608(1)(f), MCA, in proceeds from the sale of shares of stock in a business under an agreement to sell such stock, as exempt "benefits," when such proceeds are used exclusively to pay for the debtor's end-of-life medical, surgical or hospital care and medications?

For the reasons set forth below, we answer the question "no."

## BACKGROUND

¶2 The following factual background is taken from the undisputed facts related by the Bankruptcy Court in its certification order.

¶3 Lee Orio Archer and Vicki Baird Archer are married and filed a joint Chapter 7 bankruptcy case in December of 2004. The list of their personal property provided to the Bankruptcy Court includes an asset with a market value of $25,000, described as "Proceeds from sale of stock in Instrument Service, Inc., Co. which he [Lee] formed. $1,000/mo. $12,000/yr through 2006." The Archers also included these proceeds from sale of stock in their list of property exempt from the bankruptcy proceedings, citing § 31-2-106, MCA. The Archers provided the Bankruptcy Court--and the Bankruptcy Court appended to its certification order--copies of documents relating to this asset, including the Agreement for the Sale and Purchase of Common Stock, a Guarantee, and the Promissory Note from the buyer.

¶4 Lee Archer suffers from congestive heart failure, lymphoma, severe mitral reguration

2

and various other medical conditions. In March of 2005, Lee's physicians estimated that he had approximately six months to live. Although the Archers have medical insurance which pays for some of Lee's medical care, the $7,878.18 annual cost of Lee's prescription drugs has resulted in their expenses exceeding their combined annual income in 2004 of $37,855.56. The entire $1,000 per month in contract payments from the sale of Lee's stock is used to pay for his medications and medical care.

¶5 The Bankruptcy Trustee objected to the Archers' claim that the $1,000 per month payment is exempt under § 31-2-106, MCA. The Archers responded to the Trustee's objection by then citing § 25-13-608(1)(f), MCA, under which "benefits paid or payable for medical, surgical, or hospital care to the extent they are used or will be used to pay for the care" are exempt from judgment execution.

## DISCUSSION

¶6 May a debtor claim an exemption pursuant to § 25-13-608(1)(f), MCA, in proceeds from the sale of shares of stock in a business under an agreement to sell such stock, as exempt "benefits," when such proceeds are used exclusively to pay for the debtor's end-of-life medical, surgical or hospital care and medications?

¶7 A debtor in a bankruptcy proceeding may claim property enumerated in the Bankruptcy Code as exempt from the bankruptcy estate. *See* 11 U.S.C. § 522(b). States may opt out of the exemption plan set forth in the federal bankruptcy statute, however, and Montana has done so. Debtors like the Archers who live in an "opt out" state may claim the exemptions provided under state law. *See* 11 U.S.C. § 522(b)(3)(A).

¶8 In this case, the Bankruptcy Court's certified question involves the interpretation of Montana exemption law, specifically § 25-13-608(1)(f), MCA. The Bankruptcy Court has

3

determined, pursuant to Rule 44, M.R.App.P., that no controlling appellate decision, constitutional provision, or statute of this state answers the question here presented.

¶9      Section 25-13-608(1)(f), MCA, provides that a debtor is entitled to exemption from execution for "benefits paid or payable for medical, surgical, or hospital care to the extent they are used or will be used to pay for the care." The Archers claim the term "benefits" should be interpreted to include the proceeds they receive from the sale of the stock, to the extent those proceeds are used for Lee's medical care.

¶10     The Archers analogize this case to *Dayton v. Ewart* (1903), 28 Mont. 153, 72 P. 420. In *Dayton*, this Court ruled that gold dust from a placer claim by a poor miner whose family depended for support on his working the placer mine fell within a statute exempting "earnings for personal services" from attachment or execution. *Dayton*, 28 Mont. at 157, 72 P. at 422.

¶11     *Dayton* plainly involved different statutory language and circumstances than those at issue here. Moreover, the Court premised its determination on the fact that personal services were not limited to services performed for another. *Dayton*, 28 Mont. at 156, 72 P. at 421-22. Finally, the Court stated "we deem it proper to say that this case is determined and decided with reference to the facts presented only." *Dayton*, 28 Mont. at 157-58, 72 P.2d at 422. As a result, *Dayton* is distinguishable from the present case on both the facts and the law, and the interpretation of "earnings for personal services" therein provides no guidance for resolution of the question in the present case.

¶12     The Archers also claim interpreting "benefits" to include the stock proceeds at issue here would be consistent with exemptions that exist in the Bankruptcy Code. 11 U.S.C. §

4

522(d)(10)(E) provides that the debtor's right to receive a payment under an annuity or contract on account of length of service may be exempt to the extent reasonably necessary for the support of the debtor and his or her dependents. The Archers contend this federal statute demonstrates that exemptions of the type they claim clearly exist, and that interpretation of § 25-13-608(1)(f), MCA, in favor of the exemption they claim is not unreasonable. The Archers are mistaken.

¶13    Under federal law, payments made "on account of illness, disability, death, age . . . for the support of the debtor and any dependent" are exempt <u>only</u> if such payments qualify under special pension, profit-sharing, stock bonus, employee annuities or individual retirement account provisions of the Internal Revenue Code. *See* 11 U.S.C. § 522(d)(10) and 26 U.S.C. §§ 401(a), 403(a) and (b), and 408. Payments received on a promissory note from the sale of stock in a business--the payments at issue here--generally would not qualify under these special Internal Revenue Code provisions for qualified pension, profit-sharing, stock bonus and qualified employee annuity plans, and individual retirement accounts. In the present case, the Agreement, Guarantee and Promissory Note contain no direction or indication whatsoever that the monthly payments Lee receives from the sale of his stock were intended as benefits which qualify under these specific Internal Revenue Code sections. The federal exemptions--which in any event do not apply in an opt-out state like Montana--provide no support for the Archers' argument that the exemption they claim is reasonable.

¶14    Finally, the Archers claim Article XIII, Section 5 of Montana's Constitution and our case law require that exemption statutes must be liberally construed in favor of debtors, citing *In re Zimmerman*, 2002 MT 90, ¶ 15, 309 Mont. 337, ¶ 15, 46 P.3d 599, ¶ 15 (citation

5

omitted). They maintain that interpreting § 25-13-608(1)(f), MCA, to grant exemption of the proceeds from the sale of shares of stock to the extent those proceeds are or will be used to pay for Lee's end-of-life medical care and medications is a reasonable interpretation.

¶15 Article XIII, Section 5 of the Montana Constitution provides that "[t]he legislature shall enact liberal homestead and exemption laws." Our cases, including *Zimmerman*, set forth the principle that courts will give liberal construction to exemption laws. *See also MacDonald v. Mercill* (1986), 220 Mont. 146, 151, 714 P.2d 132, 135; *Neel v. First Federal Savings and Loan Assoc. of Great Falls* (1984), 207 Mont. 376, 383, 675 P.2d 96, 100. We note, however, that the case cited as authority for the proposition relied on in *Zimmerman* also cautions that "[i]t is the law in this state that the exemption statutes are to be liberally construed but such construction may not disregard plain legislative mandate." *MacDonald*, 220 Mont. at 151, 714 P.2d at 135. Thus, the principle of liberal construction of exemption laws set forth in *Zimmerman*, like virtually every other principle, has limits.

¶16 In interpreting a statute, we attempt to implement the objectives the legislature sought to achieve. Legislative intent is ascertained, in the first instance, from the plain meaning of the words used. If the intent of the legislature can be determined from the plain meaning of the words used, the plain meaning controls and the court need go no further nor apply any other means of interpretation. *Western Energy Co. v. State, Dept. of Revenue*, 1999 MT 289, ¶ 11, 297 Mont. 55, ¶ 11, 990 P.2d 767, ¶ 11 (citations omitted).

¶17 Both the Amicus Curiae Montana Trial Lawyers Association and the Trustee cite dictionary definitions of "benefits" as support for their interpretation of that word in § 25-13-608(1)(f), MCA. "Benefits" means:

1 *archaic*: an act of kindness: BENEFACTION 2 a: something that promotes well being: ADVANTAGE b: useful aid: HELP 3 a: financial help in time of sickness, old age, or unemployment b: a payment or service provided for under an annuity, pension plan, or insurance policy 4: an entertainment or social event to raise funds for a person or cause.

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 106 (10th Ed. 1993). The Amicus, in asserting that the contract payments in this case are "benefits," relies on "something that promotes well being: ADVANTAGE" and "financial help in time of sickness, old age, or unemployment." The Trustee, asserting that the contract payments are not "benefits," relies on "payment or service provided for under an annuity, pension plan, or insurance policy." Given the breadth of the dictionary definitions, they are of no assistance in our resolution of the meaning of the word here, so we will turn to reading "benefits" in its statutory context.

¶18 Section 25-13-608, MCA, provides an extensive list of exemptions from execution, including prescribed health aids, Social Security benefits, veterans' benefits, individual retirement accounts, maintenance and child support, burial plots and certain types of statutory retirement system payments. The common denominator in all these exemptions is their specificity--all are unique types of support created for specific purposes. Read in context with the other provisions of § 25-13-608, MCA, we conclude that "benefits paid or payable for medical, surgical, or hospital care" indicates "benefits" means a unique type of support which, by its terms, is to be used solely for medical, surgical or hospital care. In this context, it strains credulity to assert that the Legislature intended this provision to exempt payments received on a promissory note merely because the debtor ultimately chooses to use the payments to pay for health-care-related costs.

¶19 We conclude that, in the context of § 25-13-608(1)(f), MCA, the term "benefits"

7

includes only those payments to a debtor which are expressly earmarked for the sole purpose of paying medical, surgical or hospital bills. As a result, we hold that where, as here, there are no contractual restrictions on the debtor's use of the proceeds from a sale of shares of stock in a business, the debtor may not claim such proceeds as exempt "benefits" pursuant to § 25-13-608(1)(f), MCA, even when the proceeds are actually used exclusively to pay for the debtor's end-of-life medical, surgical or hospital care and medications.

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

8

Justice James C. Nelson dissenting.

¶20    I dissent from the Court's Opinion.

¶21    We had two ways of interpreting § 25-13-608(1), MCA—liberally and without technical objections as Article XIII, Section 5 of Montana's Constitution explicitly provides; as the Legislature intended in enacting the statute; and as we have consistently interpreted the statute in our case law[1]—recognizing the "humane and remedial purposes" of laws enacted under this provision "to shield the poor, and not to strip them." *Ferguson v. Speith* (1893), 13 Mont. 487, 491, 34 P. 1020, 1023 (interpreting the identical provision of Article XIX, Section 4 of the 1889 Constitution).  Or, we could have interpreted the statute narrowly, technically, without regard to its remedial purposes, and inhumanely to strip the Archers of virtually the only funds they have to meet their end-of-life medical expenses, and to benefit their general creditors.  Sadly, we have chosen the latter interpretation.

¶22    Section 25-13-608(1), MCA, provides that "[a] judgment debtor is entitled to exemption from execution of the following: . . . (f) benefits paid or payable for medical, surgical, or  hospital care to the extent they are used or will be used to pay for the care."

¶23    Analyzing the relevant terms of this statute according to their context and approved usage—*see* § 1-2-106, MCA—a "benefit" is "something that promotes well being;

---

[1] *In re Zimmermann*, 2002 MT 90, ¶ 15, 309 Mont. 337, ¶ 15, 46 P.3d 599, ¶ 15; *MacDonald v. Mercill* (1986), 220 Mont. 146, 151, 714 P.2d 132, 135; *Neel v. First Fed. Sav. & Loan Assoc.* (1984), 207 Mont. 376, 387, 675 P.2d 96, 102; *Blakely v. Dupre* (1984), 209 Mont. 282, 284, 679 P.2d 1255, 1256; *Williams v. Sorenson* (1938), 106 Mont. 122, 130, 75 P.2d 784, 788; *State ex rel. Bartol v. Justice of the Peace* (1936), 102 Mont. 1, 7, 55 P.2d 691, 693; *McMullen v. Shields* (1934), 96 Mont. 191, 194, 29 P.2d 652, 653; *Esterly v. Broadway Garage Co.* (1930), 87 Mont. 64, 71, 285 P. 172, 174; *Dayton v. Ewart* (1903), 28 Mont. 153, 155, 72 P. 420, 421.

advantage; useful aid; help" or constitutes "financial help in time of sickness, old age, or unemployment." *Merriam Webster's Collegiate Dictionary* 106 (10th ed. 1997) (hereinafter *Webster's*). "Payable" means: "that may, can or must be paid." *Webster's*, at 854.

¶24 The record reflects that the Archers claim the exemption at issue to shield stock sale proceeds and to use those proceeds to pay for their end-of-life medical care. These payments are undisputedly "something that promotes well being;" are a "useful aid," "help" and "advantage;" constitute "financial help in time of sickness [or] old age," and can be "paid" for medical care. See *Dayton*, where applying a liberal and non-technical construction to the statute, we observed:

> A technical construction of the statute would . . . be at variance with the spirit of the constitution and the laws of the state [Article XIX, Section 4 of the 1889 Constitution]. . . .
> . . . .
> . . . One confers an advantage upon himself by striving for his own benefit, and looks upon his labor done in his own benefit . . . as that which particularly furthers his interest and happiness.

*Dayton*, 28 Mont. at 155-56, 72 P. at 421-22.

¶25 As noted, we had two ways to interpret the statute at issue in the context of this case. It is black-letter law that when a statute is susceptible to two interpretations, one in favor of a natural right and the other against it, the interpretation which favors the natural right should be preferred. Section 1-2-104, MCA. Here, the Archers' natural rights—indeed, their fundamental constitutional rights to pursuing life's basic necessities, seeking safety, health and happiness,[2] and to individual human dignity[3]—fully justify their right to use their only

---

[2] Art. II, § 3, Mont. Const.
[3] Art. II, § 4, Mont. Const.

10

available financial asset to insure their end-of-life medical care and essential end-of-life expenses.

¶26 The Archers are heartbreaking examples of what is wrong with health care in this Country. Tragically, they are one of millions of elderly couples whose health care and medication costs have simply outstripped their meager ability to pay. And, they are the victims of a society and a government that does not particularly care.

¶27 A liberal, non-technical and humane interpretation of the exemption statute would allow the Archers to live out their days in dignity providing for their own medical care and end-of-life expenses. To the contrary, our crabbed interpretation of the exemption statute— the one which is not preferred under the law—has stripped the Archers of their natural and constitutional rights and the benefit which the Legislature conferred upon them under the statutory exemption.

¶28 I dissent.

/S/ JAMES C. NELSON