

DA 10-0002

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 131

BANK OF AMERICA,

      Plaintiff and Appellee,

  v.

MARY JO IVEY,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DV 2008-445
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            D. Michael Eakin, Chuck Munson, Montana Legal Services Association,
            Billings, Montana

      For Appellee:

            Eeva Greenley, Johnson, Rodenburg & Lauinger, Fargo, North Dakota

                        Submitted on Briefs:  May 25, 2010

                                Decided:  June 8, 2010

Filed:

      _____
                       Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 This is an appeal from the order of the Second Judicial District Court, Silver Bow County, holding that Mary Jo Ivey's personal checking account is not exempt from execution under § 25-13-609(1), MCA. We affirm.

¶2 Mary Jo is a disabled resident of Butte, Montana. She currently lives solely off Social Security Disability Insurance (SSDI) benefits that total $691.00 per month plus Supplemental Security Income (SSI) benefits that total $4.00 per month. In June 2008, when the events at issue here occurred, Mary Jo was living off SSDI benefits totaling $653.00 per month.

¶3 On June 6, 2008, Mary Jo received a rebate under the Economic Stimulus Act of 2008 in the form of a $300.00 electronic deposit to her personal checking account with U.S. Bank. At this time, Bank of America held a default judgment against Mary Jo (obtained two years earlier in a collection action) in the amount of $3,036.95. On June 9, 2008, Bank of America executed upon and seized all of the funds in Mary Jo's checking account which, after the deduction of a $75.00 execution fee, consisted of $454.38. That same day, three previously written checks and a Visa CheckCard purchase were posted to Mary Jo's account, resulting in four $35.00 overdraft charges. Mary Jo became aware of the execution the following day (June 10) through a coincidental online balance inquiry and a call to the bank. She thereafter was served with a Notice of Execution Levy dated June 26, 2008.

¶4 Mary Jo objected to the seizure of her funds and requested a hearing in Silver Bow County Justice Court (where the original default judgment had been entered). Bank of

2

America ultimately acknowledged that her social security benefits were exempt from execution pursuant to § 25-13-608(1)(b), MCA, and it therefore agreed to return $154.38 to Mary Jo. That left in dispute her $300.00 economic stimulus rebate and the $75.00 execution fee. Mary Jo argued that the $75.00 fee came out of her social security benefits and, thus, should be returned with the other $154.38. As for the $300.00 rebate, Mary Jo argued that a "household bank account" is a "household good" under § 25-13-609(1), MCA, and, as such, is exempt from execution up to $600.00. (Under this theory, the entire $529.38 in her account at the moment of execution would be exempt.) In addition, she argued that the Notice of Execution Levy was untimely and that executing on her economic stimulus money violated the Supremacy Clause of the United States Constitution. The Justice Court disagreed with all three arguments and denied her claim for exemption.

¶5 Mary Jo then appealed to the District Court, raising the same three grounds. That court concluded as follows: Mary Jo's checking account is not a household good exempt from execution under § 25-13-609(1), MCA; while the Notice of Execution Levy was untimely under § 25-13-211(1), MCA, Mary Jo had not been prejudiced as a result; and Mary Jo had not established how Montana's execution statute thwarts the purpose and objectives of the Economic Stimulus Act of 2008.

¶6 Mary Jo now appeals to this Court, raising the single issue of whether a personal checking account used to pay household expenses is a "household good" protected up to $600.00 by § 25-13-609(1), MCA. This statute states that a judgment debtor is entitled to exemption from execution of

the judgment debtor's interest, not to exceed $4,500 in aggregate value, to the extent of a value not exceeding $600 in any item of property, in *household* furnishings and *goods*, appliances, jewelry, wearing apparel, books, firearms and other sporting goods, animals, feed, crops, and musical instruments. [Emphases added.]

As noted, the District Court disagreed with the proposition that a personal checking account is a "household good." The court reasoned that while the statute lists many specific items, it does not list accounts or moneys. Conversely, the statute listing what property *is* subject to execution includes "moneys." *See* § 25-13-501, MCA ("All goods, chattels, *moneys*, and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law, and all property and rights of property seized and held under attachment in the action are liable to execution. . . ." (emphasis added)).

¶7　Of course, Mary Jo points out that § 25-13-501, MCA, refers to "moneys . . . not exempt by law," which thus brings us back to the exemption statutes and the question of whether "moneys" held in a personal checking account are exempt from execution as a "household good" under § 25-13-609(1), MCA. Mary Jo offers a number of reasons why she believes her checking account—which she says contains the funds she uses to purchase household furnishings and goods, appliances, wearing apparel, and books— should itself be considered a "household good." However, we are not persuaded by her arguments that the Legislature intended with the language "household furnishings and goods, appliances, jewelry, wearing apparel, books, firearms and other sporting goods, animals, feed, crops, and musical instruments" to include—by implication—the personal checking account containing the moneys with which such items might be purchased.

4

¶8 Mary Jo notes a number of policy considerations for why her checking account should be exempt from execution. She contends that as a result of Bank of America's actions here, she was left destitute, exposed to overdraft charges and mounting debt, and having to borrow money from acquaintances just to buy food. She points out that the exemption laws were enacted to preclude this sort of result; that such laws were intended to shield the poor, *Ferguson v. Speith*, 13 Mont. 487, 496, 34 P. 1020, 1022-23 (1893), and to prevent the debtor and his or her dependents from becoming public charges, *Hitt v. Glass*, 164 B.R. 759, 764 (Bankr. App. 9th Cir. 1994); and that courts are therefore to construe exemption statutes liberally, *In re Archer*, 2006 MT 82, ¶ 15, 332 Mont. 1, 136 P.3d 563. Mary Jo argues that a low-income debtor such as herself should have the funds which are used for household purchases protected from seizure up to $600.00.

¶9 In response, Bank of America curtly dismisses these arguments as "inapposite, especially in the context of a one-time economic stimulus payment." Bank of America brazenly characterizes Mary Jo's $300.00 economic stimulus payment as a "windfall" and suggests that the seizure of this money did not harm her or leave her destitute because "it is not part of her social security benefits nor is it regularly relied-upon income." These contemptuous remarks, however, are utterly unavailing in light of the fact that Bank of America abruptly seized *every last cent* in Mary Jo's account, including exempt social security benefits (which were not returned until after a hearing in Justice Court roughly eight weeks later), thus leaving her with a *negative* balance once the three previously written checks, the CheckCard purchase, and the four overdraft charges were posted to her account. They also suggest total indifference to Mary Jo's predicament

5

following the seizure. In this regard, Mary Jo points out that as a result of its own dire predicament in 2008 (the same year it seized her $300.00 economic stimulus rebate), Bank of America received billions of dollars in bailout money from the federal government. But more to the point, Bank of America evidently fails to appreciate that exemption laws were indeed designed to shield the poor, not to strip them. *Ferguson*, 13 Mont. at 496, 34 P. at 1022-23.

¶10 The fundamental problem with Mary Jo's position is not that it necessarily lacks merit or is "inapposite," but that it is being made to the wrong branch of government. While exemption statutes are to be construed liberally, such construction may not disregard plain legislative mandate. *Archer*, ¶ 15. Here, "household checking account" is not contained in the list in § 25-13-609(1), MCA, and we are not persuaded that the Legislature intended the term "goods" to encompass "moneys" that are contained in a "household checking account." Thus, Mary Jo's policy arguments need to be made to the Legislature, since it is not this Court's prerogative to rewrite the statute in the manner she proposes. *See* § 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.").

¶11 Affirmed.

/S/ JAMES C. NELSON

We Concur:
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS