# FILED

April 28 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0374

DA 14-0374

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 115

LUCAS RANCH, INC.; MONTANA FARM
BUREAU FEDERATION; and THE
MONTANA TAXPAYERS' ASSOCIATION,

       Petitioners and Appellants,

   v.

MONTANA DEPARTMENT OF REVENUE,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and For the County of Meagher, Cause No. DV-10-02
Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Michael Green, D. Wiley Barker, Crowley Fleck, PLLP, Helena, Montana

      For Appellee:

          Daniel J. Whyte, Amanda L. Myers, Special Assistant Attorneys General,
Montana Department of Revenue, Helena, Montana

Submitted on Briefs:  February 4, 2015
Decided:  April 28, 2015

Filed:

                             Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Lucas Ranch, the Montana Farm Bureau Federation, and the Montana Taxpayers' Association ("Petitioners") filed suit against the Montana Department of Revenue ("Department"), in the District Court for the Fourteenth Judicial District, Meagher County. In June 2013, the Department moved for summary judgment. The District Court granted the Department summary judgment and the Petitioners appeal.

¶2 The sole issue on review is whether the District Court correctly interpreted § 15-7-111, MCA.

## BACKGROUND

¶3 In 2009, the Department began the process of reappraising Montana agricultural properties. All residential, agricultural, and timber properties are reappraised every six years. Section 15-7-111, MCA; *Covenant Investments, Inc. v. State,* 2013 MT 215, ¶ 4, 371 Mont. 186, 308 P.3d 54. Prior to the 2009 reappraisal, the Department relied on self-reporting by property owners. In 2005, the Legislature provided funding for a systematic reappraisal of agricultural lands by the Department. In the words of Dallas Reese, Department Management Analyst for the Property Assessment Division, "[t]his reappraisal process for agricultural property was the most comprehensive and detailed in almost 45 years." Aff. Dallas Reese ¶ 7 (April 26, 2010). The Department utilized a number of methods for assessing the land including a geographical information system (GIS), soil surveys from the United States Department of Agricultural Natural Resource Conservation Service (USDA NRCS), a global position system (GPS), an in-depth

2

review of soil types, and aerial photographs. The Department also surveyed landowners, however the response was limited, garnering only about a 10% return rate.

¶4      The Department uses a multi-step process for determining the taxable value for the land. First, the Department identifies the land use and categorizes it according to five classifications: grazing land, non-irrigated summer fallow farm land, tillable irrigated farm land, non-irrigated continuously cropped hay land, or non-irrigated continuously cropped farm land. Second, the Department determines the productivity yield using the USDA NRCS soil surveys and calculates production information for each acre of land by classification. Adjustments are made to reflect income that the average Montana farm or ranch could have attained on the land as required by § 15-7-201(7)(e), MCA. Third, the productivity amount is multiplied by an averaged commodity price determined by Montana agricultural statistical data, to arrive at the gross income per acre. Fourth, the Department calculates a net income per acre according to specific Department administrative rules based on the different classification categories. Finally, the net income per acre is divided by the capitalization rate established in § 15-7-201(4)(c), MCA, and the assessed values are totaled and multiplied by the current taxable percentage to arrive at the taxable value for the parcel.

¶5      During a six-year cycle, any increases in value from the previous cycle must be accounted for. The Montana Legislature, in an effort to alleviate the tax sting due to fluctuations in value, provided for the phase-in of increases in value from previous cycles. Two values are needed to determine phase-in amounts: the current full market value and the value before reappraisal ("VBR"). The full market value of a property is

3

determined at the beginning of the cycle. The VBR, as defined in Admin. R. M. 42.20.501(25) (2006):[1]

> the 2002 tax year value adjusted for any new construction or destruction that occurred in the prior year. The VBR for the 2003 tax year and subsequent years is the same as the 2002 tax year value if there is no new construction, destruction, land splits, land use changes, land reclassifications, land productivity changes, improvement grade changes, or other changes made to the property during 2002 or subsequent tax years.

The 2002 tax year value refers to the fully phased-in value from the previous cycle. The phase-in amount is the difference between the full market value at the beginning of the six-year cycle and the full market value from the prior six-year cycle. This amount is phased-in at a rate of 16.66% each year.

¶6 The Department initially calculated the VBR based on the 2009 updated classification for all agricultural properties. Subsequently, the Department realized that Admin. R. M. 42.20.502 required it to use the unadjusted 2002 base year value, rather than the newly calculated VBR, for properties that increased in value based on a change in productivity. In 2010, the Department adopted a new rule, Admin. R. M. 42.20.607 (2010), to clarify and distinguish between properties experiencing change due to market fluctuations and those changing due to the actions of the owner. If the increase was due to market changes (i.e., changes in the price of a commodity), the Department used the unadjusted 2002 base year value.[2] If the increase was due to non-market changes, such

---

[1] Admin. R. M. 42.20.501 was updated in December 2014. The version quoted above was in effect at the time of Petitioner's reappraisal.

[2] The Department corrected VBR calculations only if the taxpayer timely filed an appeal. If the taxpayer did not timely file an appeal, the Department would correct the VBR calculation starting in tax year 2010. Admin. R. M. 42.20.607 (2010).

4

as land reclassification,[3] the Department calculated a new VBR. The new VBR accounted for the increase in value attributable to the non-market change.

¶7 In 2009, the Department reappraised the Lucas Ranch.[4] The Department concluded that the Lucas Ranch had non-market changes due to reclassification of land and thus required a newly calculated VBR. In February 2010, the Petitioners filed a Petition for Declaratory Judgment and Writ of Mandate, seeking a declaration that the Department improperly assessed their agricultural property for tax purposes and failed to properly phase-in the increases in value from the previous cycle resulting in erroneous taxable values for the Lucas Ranch and all similarly situated landowners. The Department answered, arguing that it properly applied the statute and that Petitioners were not entitled to the 16.66% phase-in due to the reclassification of their land. In April 2010, Petitioners moved for class certification and the District Court denied their motion. The Petitioners appealed to this Court, which reversed and remanded the matter for class certification pursuant to M. R. Civ. P. 23, as permitted by § 15-1-407(2)(a), MCA.

¶8 After the case returned to the District Court, the Department moved to dismiss Charles B. Lucas, who was deceased, as well as the Montana Farm Bureau Federation and the Montana Taxpayers Association for failure to represent the class. The Petitioners stipulated to the dismissal of Charles B. Lucas, but objected to the dismissal of the Farm

---

[3] "Land reclassifications" refers to a change in "use of land from one type of agricultural use to a different type of agricultural use" (i.e., grazing land converted to irrigated land). Admin. R. M. 42.20.501(13) (2006).

[4] The Lucas Ranch includes the following parcels: Sections 10, 11, 12, 13, 14, 15, 22, and 23 of Township 6 North, Range 8 East, P.M.M. and Sections 6, 7, 8, 18, 19, and 30 of Township 6 North, Range 9 East, P.M.M.

Bureau Federation and the Montana Taxpayers Association. In June 2013, the Department filed for partial summary judgment on the Petitioners' writ of mandate, and later filed a motion for summary judgment. Petitioners then filed a cross motion for summary judgment.

¶9 On June 2, 2014, the District Court granted the Department's motion for summary judgment. The District Court declared the remaining motions moot.

## STANDARD OF REVIEW

¶10 We review a grant of summary judgment de novo, applying the same analysis as the district court pursuant to M. R. Civ. P. 56. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186 (citations omitted). "Where there is a cross-motion for summary judgment, we review a district court's decision to determine whether its conclusions were correct." *Baxter v. State*, 2009 MT 449, ¶ 8, 354 Mont. 234, 224 P.3d 1211 (citations omitted).

¶11 Summary judgment is proper when the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lorang,* ¶ 37; M. R. Civ. P. 56(c). The moving party bears the initial burden of "establishing a complete absence of genuine issues of material fact." *Lorang,* ¶ 37 (citations omitted). When determining whether genuine issues of material fact remain, we view the evidence in the light most favorable to the non-moving party. *Lorang,* ¶ 38 (citations omitted).

¶12 If the moving party satisfies its burden, the non-moving party must "set forth specific facts, not merely denials, speculations, or conclusory statements, in order to establish that a genuine issue of material facts does indeed exist." *Lorang,* ¶ 39 (citations

6

omitted); M. R. Civ. P. 56(e). Ultimately, if no issue of material fact exists, the Court must decide whether the facts entitle the moving party to judgment as a matter of law. *Lorang,* ¶ 39; M. R. Civ. P. 56(c).

## DISCUSSION

¶13 *Issue: Whether the District Court correctly interpreted § 15-7-111, MCA.*

### A. Plain Language of § 15-7-111, MCA

¶14 Petitioners contend on appeal that the District Court adopted an interpretation of § 15-7-111, MCA, that ignores the plain language of the statute. Petitioners argue that the statute requires the Department to phase-in the change in value by equal amounts over the six-year cycle as detailed in subsection (3) of § 15-7-111, MCA. Petitioners assert that "reclassification" in the context of § 15-7-111, MCA, refers to changes among classes (i.e. Class 3 to Class 4), not changes within agricultural use (i.e., fallow to irrigated). They argue that even if the Legislature intended to include changes to agricultural use within subsection (2), the Department did not adopt rules to assess the valuation and phase-in value.

¶15 This Court interprets a statute first by looking to its plain language. *Baxter,* ¶ 41; *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003; *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288. If the statute's language is clear and unambiguous, no further interpretation is necessary. *Baxter*, ¶ 41 (citations omitted). We presume that the Legislature does not pass meaningless or useless legislation. *Mont. Sports Shooting Ass'n,* ¶ 15. Moreover, "[s]tatutory

7

construction should not lead to absurd results if a reasonable interpretation can avoid it." *Letasky*, ¶ 11.

¶16 As discussed above, Montana law provides that the Department "shall administer and supervise a program for the revaluation of all taxable property within class three under 15-6-133, class four under 15-6-134, and class ten under 15-6-143." Section 15-7-111, MCA. The Department reappraises agricultural property on a six-year cyclical basis. Section 15-7-111, MCA; *Covenant Investments*, ¶ 4. Subsections (2) and (3) of § 15-7-111, MCA, contemplate two different tax scenarios depending on the changes to the property.

¶17 Under subsection (2), when a property is "newly constructed, remodeled, or reclassified," the Department is tasked with valuing and phasing-in the property "in a manner consistent with the valuation within the same class and the values established pursuant to subsection (1)." Section 15-7-111(2), MCA. A landowner's decision to change from grazing to tillable land is a reclassification and falls under subsection (2) of § 15-7-111, MCA. Admin. R. M. 42.20.501(13) (2006). When a property's value increases due to non-market changes such as a reclassification, the Department must assess the new value and calculate a new VBR. Section 15-7-111(2), MCA.

¶18 The plain language clearly states that this rule also applies when land is "reclassified within the same class." Section 15-7-111(2), MCA. Petitioners argue that subsection (2) covers only property changing from one class to another class (i.e., Class 3 to Class 4), not changes within a class. Reference to the regulation's definitions shows that "land reclassification" refers to changes from one agricultural use to another (e.g.,

8

grazing land converted to irrigated land), retaining its agricultural purposes. Admin. R. M. 42.20.501(13) (2006). Reclassification differs from "land use change," wherein the land no longer retains its agricultural purpose and involves conversion from agricultural land to forestland for example. Admin. R. M. 42.20.501(15) (2006).

¶19 Under subsection (3), when the increase in value is due to a market change beyond the taxpayer's control, the Department uses the valuation from the 2002 base year, phased in at the rate of 16.66% of the change in valuation. Section 15-7-111(3), MCA; Admin. R. M. 42.20.501(25) (2006). The clear language of this section provides that the amount attributable to market changes (i.e., not the result of actions taken by the taxpayer) is gradually phased in over the six-year cycle.

¶20 The District Court correctly interpreted § 15-7-111, MCA. Here, the Petitioners experienced a reclassification of land as determined by the 2009 appraisal. The Department concluded that 3.47 acres of Lucas Ranch land changed from grazing to tillable land. This reclassification implicated subsection (2) and the Department calculated a new VBR using the 2002 value adjusted by the reclassification value. If the District Court followed the approach suggested by the Petitioners and used the 2002 value in 2009, it would ignore the value added to the property associated with the reclassification. When a taxpayer makes changes to the land that increase the value, the VBR must account for the increased property value. If the VBR did not account for the increase, the taxpayer would escape tax liability on the increased value. Such an interpretation would render subsection (2) meaningless.

¶21 The Petitioners maintain that the District Court ignored the maxim that tax statutes must be strictly construed in favor of the taxpayer. *Western Energy Co. v. Dep't of Revenue*, 1999 MT 289, ¶ 10, 297 Mont. 55, 990 P.2d 767 (citations omitted). Petitioners' argue that when "ambiguity exists in the statute, doubt should be resolved in the taxpayer's favor." Here, however, the statute is not susceptible to two constructions, as there is no ambiguity. Rather, the plain language clearly establishes that properties that have been reclassified are subject to subsection (2) and do not get the incremental phase-in discussed in subsection (3). The District Court correctly interpreted the plain language of § 15-7-111, MCA, and complied with our rules of statutory construction.

## B. The Department's Rulemaking, Application, and Future Implementation of § 15-7-111, MCA

¶22 Petitioners make three additional arguments. First, they maintain that the Department failed to follow the rule making mandate of § 15-7-111(2), MCA. Second, Petitioners argue that the Department's application of § 15-7-111, MCA, results in continuing violations of Montana law. Lastly, Petitioners assert that the Department is incapable of implementing the District Court's interpretations of § 15-7-111, MCA.

¶23 Petitioners argue that the Department failed to promulgate rules and that the existing rules are outdated. Under § 15-7-111(2), MCA, the Department must adopt rules for "determining the assessed valuation and phased-in value of new, remodeled, or reclassified property within the same class." Petitioners' argument misses the primary issue at stake in this appeal; that is, whether the District Court correctly interpreted

10

§ 15-7-111, MCA. The failure to update the dates on the rules may be an error, but it does not have a substantive effect on the District Court's interpretation of the statute.

¶24 Petitioners also point to a number of alleged violations of Montana law by the Department. First, they argue that the Department applied the newly calculated VBR to parcels with no land change and to entire parcels when the change only affected a small number of acres. The Department argues, and we agree, that if individual landowners dispute the Department's findings, they can raise the issue with the local or state tax appeal boards.

¶25 Second, the Petitioners maintain that the Department violated its own rule, Admin. R. M. 42.20.502, when it applied the new VBR to property with changes occurring before 2002. The rule states,

> (1) For property that *contains no new construction, destruction, land splits, land use changes, land reclassifications, land productivity changes, improvement grade changes, or other changes* made to the property <u>during 2002 or subsequent tax years</u>, the current year VBR will be the same as the prior year VBR.
> (2) For class three property that contains *a land reclassification or a land use change*, the current year VBR will be the prior year VBR of the new classification or land use change.
> (3) For class three property that contains a productivity or grade change, the current year VBR will be the prior year VBR of the prior grade.

Admin. R. M. 42.20.502 (2002) (emphasis added).

¶26 Under Admin. R. M. 42.20.502(1), Petitioners argue, the land changes must have occurred during or after 2002. Petitioners maintain that many of the changes occurred ten to twenty years ago. Petitioners are correct that under Admin. R. M. 42.20.502(1), the rule references changes made "during 2002 or subsequent tax years." However, the

11

next subsection specifically provides for "class three [agricultural] property that contains a land reclassification or a land use change" and does not specify a year when the change must have occurred. Admin R. M. 42.20.502(2). Here, the Lucas Ranch experienced a land reclassification, therefore Admin. R. M. 42.20.502(2) applies, not Admin. R. M. 42.20.502(1). There is no requirement under Admin R. M. 42.20.502(2) that the changes occur during or after 2002. Moreover, § 15-8-601, MCA, permits the Department, with some limitations, to assess property that escaped assessment or was erroneously assessed by the Department. *OEA Research v. McGee*, 217 Mont. 321, 324, 704 P.2d 1042, 1045 (1985).

¶27 Third, the Petitioners argue that the District Court's interpretation violates equal protection. The District Court acknowledged that two parcels, growing the same crop on the same acreage, may be taxed differently for five years. However, we have previously recognized that "any cyclical revaluation plan inevitably would create temporary disparities between individual property valuations." *Covenant Investments*, ¶ 17 (citations omitted). We have upheld the cyclical variations so long as "no intentional, systemic, arbitrary, or fraudulent discrimination was present." *Covenant Investments, Inc.*, ¶ 17; *Larson v. State and Department of Revenue,* 166 Mont. 449, 455, 534 P.2d 854, 857 (1975). Part of the explanation for the variations is that many parcels underwent land changes or reclassifications in prior decades and those changes were not reflected in previous cycles. These parcels, which appear the same today, may have been subject to reclassifications that altered their taxable value. Only in 2009, when the Department had the funding to actually assess and appraise the land, were the changes

revealed and new VBRs had to be calculated. Many of the properties experienced large VBR increases, but had previously benefited from significant underassessment. Under the Petitioner's proposal, this undervaluing would continue for another cycle.

¶28 Lastly, the Petitioners argue that the Department does not have the necessary information to determine when the new VBR should be applied. Petitioners assert that the Department lacks vital information such as which acres changed, the prior use of each parcel, and mapping of the areas. The Petitioners concede that the Department has sufficient information on changes after January 2009. However, they argue that to comply with Admin. R. M. 42.20.501 and 502, the Department must know whether those changes occurred during or after 2002. The Petitioners argument misses the real issue on appeal, that is, whether the District Court properly interpreted the plain language of § 15-7-111, MCA. Whether the Department has enough information on each parcel does not impact the interpretation of the statute regarding phase-in benefits for non-market changes to property.

## CONCLUSION

¶29 We affirm the District Court's order granting summary judgment to the Department on the Petitioner's Petition for Declaratory Judgment and Writ of Mandate.


/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ MICHAEL E WHEAT

Justice Jim Rice, specially concurring.

¶30    I concur with the Court's decision and have signed the Opinion.  In regard to Petitioners' argument that reclassification of property in the context of § 15-7-111, MCA, refers only to changes between property classes and not to changes in agricultural use, I am persuaded by the Department's citation to § 15-7-201, MCA (2009), which includes the following provisions:

> (2)  Agricultural land must be classified according to its use, which classifications include but are not limited to irrigated use, nonirrigated use, and grazing use.

> (3)  Within each class, land must be subclassified by production categories. Production categories are determined from the productive capacity of the land based on yield.

¶31    I further agree with the Department's argument that, when interpreting § 15-7-111, MCA, as a whole, subsection (2) governs changes in property value resulting from nonmarket factors such as changes in use—for example, from summer fallow to irrigated land—while subsection (3) is directed to and governs changes in value resulting from the 6-year statewide reappraisal or "revaluation" of classes three, four, and ten.  By enacting HB 658 in the 2009 Session, which added subsections (3) and (4) to § 15-7-111, MCA, the Legislature specifically addressed in these provisions only the increased value arising from the reappraisal process, requiring that this increase be phased in over six years at the rate of 16.66% per year.  As the title to HB 658 stated, the bill was for an Act ". . . MITIGATING THE EFFECTS OF PROPERTY TAX REAPPRAISAL . . .," inter alia. *Laws of Montana* (2009), ch. 483, § 7.  New subsection (3) was essentially an update of the Legislature's previous adoption of what is now codified as subsection (5), which also

provided for phase-in of the new market value established by the reappraisal process. These conclusions effectively overrule Petitioners' objections.

¶32 One question raised by the plain language of § 15-7-111, MCA, but not answered by the Department's analysis of the statute, is the meaning or effect of the phase-in provisions of subsection (2). Understanding, again, that subsection (2) governs the changes in value resulting from nonmarket factors such as new construction and the owner's changes in use of the property, that provision requires the Department to "value and phase in" such changes and to "adopt rules for determining the assessed valuation and phased-in value" of such changes. The language of this directive is very general compared to the particular phase-in language within subsection (3), but nonetheless explicitly requires the Department to phase in, in some manner, the changes in value arising from nonmarket factors. The Department's argument that "harmonization of subsections (2) and (3) of § 15-7-111, MCA, requires the Department to phase in *only market changes* that have occurred between the cycles" conflicts with the language of subsection (2). (Emphasis added.) This argument also conflicts with the Department's own statutory structure argument that we adopt herein, whereby subsections (2) and (3) are applied to two different processes. The Department takes the position that it can calculate a new value based upon subsection (2) property changes "at any time" and impose that new value all at once, citing § 15-8-601, MCA (permitting re-assessment of property "whenever the department discovers that any taxable property" has been erroneously assessed). Further, the Department has apparently not adopted rules to implement any kind of phase-in of subsection (2) changes, despite the statutory directive

15

to do so.  Given that this issue is not the thrust of Petitioners' argument and is ancillary to the issues as raised, resolution of these apparent conflicts will need to wait for another day.

/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶33    I dissent from the Court's decision and would hold that the Department's calculated VBR and phase-in method for "new, remodeled, or reclassified property" pursuant to subsection (2) is not supported by the plain language of § 15-7-111, MCA. Neither subsection (2) nor subsection (3) gives the Department the authority to use any value other than the value from the 2002 base year.  While subsection (2) allows for a new assessed value for property changes, it does not allow the Department to replace the value from the 2002 base year with a calculated VBR.  The Department, moreover, adopted a calculated VBR for every agricultural property in the state pursuant to subsection (2), but failed to comply with the statute's directive to adopt rules authorizing it to do so.

Subsection (2) provides:

The department shall value and phase in the value of newly constructed, remodeled, or reclassified property in a manner consistent with the valuation within the same class and the values established pursuant to subsection (1).  The department shall adopt rules for determining the assessed valuation and phased-in value of new, remodeled, or reclassified property within the same class.

16

¶34 Petitioners argue that subsection (3), which requires changes in valuation from the 2002 base year for class three, four, and ten properties be phased in at a rate of 16.66% of the change, should be applied to property valuation changes resulting from subsection (3) *and* subsection (2). The Department's position is that the phase-in procedure of subsection (3) applies only to increased valuations resulting from changes in market conditions.

¶35 Given the context of the 2009 comprehensive reappraisal of agricultural properties and the Department's subsequent adoption of ARM 42.20.607 regarding a phase in procedure for subsection (3), I can appreciate the Department's interpretation of § 15-7-111, MCA. Nevertheless, this interpretation fails to account for the clear language of the statute requiring the value of new, remodeled, or reclassified property to be "phased-in" under subsection (2). This is Petitioners' primary objection. Petitioners' argument is not compromised because they advocate a phase in method consistent with subsection (3). Petitioners, in an effort to construe the entire statute harmoniously, as we similarly must, assert that the same phase in procedure set forth in subsection (3) should be applied to subsection (2).

¶36 Thus, I agree with Justice Rice when he states in ¶ 32 that the "one question raised by the plain language of § 15-7-111, MCA, but not answered by the Department's analysis of the statute, is the meaning or effect of the phase-in provisions of subsection (2)." The Department's argument that only market changes must be phased in conflicts with the plain language of subsection (2) requiring that valuations of new, remodeled, or reclassified property similarly be phased in. Further, I fail to see a statutory basis

17

whereby subsections (2) and (3) are to be accorded different processes for phasing in. Lastly, it appears that the Department has failed to adopt any rules to implement a phase in pursuant to subsection (2), as expressly required by the statute.

¶37 I believe the foregoing must be evaluated in the context of the requirement that ". . . tax statutes are to be strictly construed against the taxing authority and in favor of the taxpayer." *W. Energy, Co. v. Dep't of Revenue*, 1999 MT 289, ¶ 10, 297 Mont. 55, 990 P.2d 767, 769. To the extent any construction of § 15-7-111, MCA, is required, the statute must be construed in the taxpayer's favor.

¶38 I dissent from our decision which does not apply these principles of statutory construction.

/S/ LAURIE McKINNON