FILED

06/29/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 16-0709

OP 16-0709

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 162

In Re:

JOHN CHARLES GIACOMETTO,

      Debtor.

| APPEAL FROM: | Certified Question from the United States Bankruptcy Court for the District of Montana, Cause No. 16-60032-7 Honorable Ralph B. Kirscher, Bankruptcy Judge |
|---|---|

COUNSEL OF RECORD:

      For Appellant:

      Joseph V. Womack, Waller & Womack, P.C., Billings, Montana

      For Appellee:

      James A. Patten, Patten, Peterman, Bekkedahl & Green, Billings, Montana

Submitted on Briefs: May 10, 2017

Decided: June 29, 2017

Filed:

_____
                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 This is an original proceeding on a certified question from the United States Bankruptcy Court, the Honorable Ralph B. Kirscher, Bankruptcy Judge. The certified question is:

> Whether, under Montana's liberal construction of exemptions, Debtor may claim an exemption in a health savings account (HSA) pursuant to § 25-13-608(1)(d) or (f), MCA.

We answer that question "yes," the Debtor may claim an exemption for a health savings account under Montana law within the constraints imposed by the statute.

¶2 The undisputed facts of this matter, supplied by the Bankruptcy Court, are as follows:

1. The Debtor filed his Chapter 11 bankruptcy petition on January 22, 2016.

2. The case was converted to a Chapter 7 on July 22, 2016, and Joseph V. Womack was appointed Trustee.

3. The Debtor filed an Amended Schedule A/B on August 23, 2016, detailing the property owned at the time that the Debtor filed his bankruptcy case.

4. The Debtor answered Question No. 17 on Form 106A/B by checking "Yes" indicating that he owned checking, savings, and other financial accounts. On Line 17.2 the Debtor listed "other financial account" "BANK OF AMERICA HEALTH SAVINGS ACCOUNT." The Debtor stated that the balance of the account was $14,319.61.

5. The Debtor completed Form 106C and claimed the Bank of America Health Savings Account exempt in the amount of $14,319.61 pursuant to § 25-13-608(1)(d) or (f), MCA.

6. The Trustee filed a timely Objection to Claim of Exemption.

7. Debtor filed a timely response to Trustee's Objection.

8. To date the Debtor's withdrawal of funds from the Health Savings Account has been applied exclusively to qualified medical expenses and for no other purpose.

The Bankruptcy Court states that there is no appellate decision in Montana on this issue.

## STANDARD OF REVIEW

¶3 The parties agree that this case presents a question of law certified to this Court pursuant to M. R. App. P. 15(3).

## DISCUSSION

¶4 *Whether, under Montana's liberal construction of exemptions, Debtor may claim an exemption for a health savings account pursuant to § 25-13-608(1)(d) or (f), MCA.*

¶5 An estate in bankruptcy consists of all legal and equitable interests of the debtor in property as of the date of filing. The debtor is allowed to exempt some property from the estate, 11 U.S.C. §§ 541(a)(1) and 522, and States may "opt out" of the exemptions provided under Federal law, as Montana has done. *In re Zimmerman, et al.*, 2002 MT 90, ¶ 7, 309 Mont. 337, 46 P.3d 599; § 31-2-106, MCA. Article XIII, Section 5 of the Montana Constitution requires the Legislature to enact "liberal" exemptions, and Montana courts construe such exemptions liberally in favor of the debtor. *In re Archer*, 2006 MT 82, ¶ 15, 332 Mont. 1, 136 P.3d 563. The intent of the exemptions and of the principle of liberal construction is to prevent the debtor and dependents from becoming destitute. *In re Glass*, 164 B.R. 759, 764 (Bankruptcy Panel, 9th Cir.). The exemptions provided by Montana law are in Title 25, chapter 13, part 6, MCA.

¶6 Long ago this Court described the liberal application of exemptions as a "wise and humane policy" required by the Montana Constitution, which should not be "frittered away

3

by construction so as to destroy their value." *Ferguson v. Speith*, 13 Mont. 487, 493, 34 P. 1020, 1021 (1893). In accordance with the Constitution, Montana case law requires that statutory exemptions be "liberally construed in favor of debtors." *Zimmerman*, ¶ 15. In *MacDonald v. Mercill*, 220 Mont. 146, 714 P.2d 132 (1986) this Court liberally construed the exemption for tools and implements necessary to carry on a trade as covering the debtor's backhoe and flatbed trailer. Where the Legislature has expressly included an item in the list of statutory exemptions, it will be liberally construed in favor of the debtor to allow it.

¶7 Section 25-13-608(1)(d), MCA, allows a judgment debtor to exempt from execution "disability or illness benefits" while § 25-13-608(1)(f), MCA, exempts "benefits paid or payable for medical, surgical, or hospital care to the extent that they are used or will be used to pay for the care." The parties have focused their arguments on § 25-13-608(1)(f), MCA, and the issue here is whether that exemption applies to the Debtor's health savings account.

¶8 In *Archer* we described the statutory exemptions:

> Section 25-13-608, MCA, provides an extensive list of exemptions from execution, including prescribed health aids, Social Security benefits, veterans' benefits, individual retirement accounts, maintenance and child support, burial plots and certain types of statutory retirement system payments. The common denominator in all these exemptions is their specificity—all are unique types of support created for specific purposes.

*Archer*, ¶ 18. An HSA is an account recognized by Federal law, 26 U.S.C. § 223, and by Montana law, §§ 15-61-201 through -205, MCA. It is funded by the Debtor and provides the Debtor a "benefit" that may be used to pay for medical, surgical or hospital care. This

4

falls within the term "benefits" in § 25-13-608(1)(f), MCA. This Court concluded that "benefits" under that statute are those "expressly earmarked for the sole purpose of paying medical, surgical, or hospital bills." *Archer*, ¶ 19. It is plain that a debtor's HSA provides him with a unique benefit earmarked to pay for medical care and expenses.[1]

¶9 Following the constitutional and statutory considerations outlined above, we conclude that § 25-13-608(1)(f), MCA, applies to an HSA as presented in this case, to the extent that it is "used or will be used to pay for the care" described in the statute.

¶10 The Dissent asserts that we should follow our decision in *Archer* and hold that there is no exemption for the HSA. The debtor in *Archer* did not seek exemption for an HSA, but rather sought exemption for the proceeds from the sale of stock that the debtor intended to use for medical expenses. The fund in *Archer* was very different from an HSA, which is a specific account recognized by both state and federal law that provides incentives for use of the funds for medical expenses and penalties if they are used for other purposes. Clearly the accounts are created specifically to be "payable for medical" care. The funds in an HSA are unique and easily distinguishable from the proceeds from a sale of shares of stock held by the debtor, as in *Archer*. The Bankruptcy Court would not have certified the present question to this Court had the issue been settled in *Archer*.

---

[1] We decline to apply § 15-61-202(7), MCA, so as to overcome the plain exemption described in § 25-13-608(1)(f), MCA. That provision applies to the personal tax liability of an account holder for withdrawals from the account. In addition, as discussed further below, that subsection has been repealed by the Montana Legislature, Senate Bill No. 216, signed by the Governor on May 4, 2017 (Chapter 298, Laws 2017).

¶11 We observed in *Archer* that the "common denominator" in the exemptions listed in § 25-13-608, MCA, "is their specificity—all are unique types of support created for specific purposes." *Archer*, ¶ 18. Health Savings Accounts likewise were created for a specific purpose: to support the payment of medical costs. The language of § 25-13-608(1)(f), MCA, is sufficiently descriptive of the nature of HSAs to include them within its coverage. But unlike most of the specific exemptions listed in the statute, the Legislature included a fact-based qualifier in subsection (1)(f), providing explicitly that medical, surgical, or hospital benefits be exempt "to the extent they are used or will be used to pay for the care." This leaves open the distinct possibility that some funds set aside in the HSA will not be exempt.

¶12 In the case of *In re Joseph Berdecia-Rodriguez*, 2016 Bankr. LEXIS 3582 (Bank. D. Mont. 2016), the Bankruptcy Court reached the same conclusion. The Court determined that the HSA is a "benefit" paid or payable to the Debtor, and that it is intended to pay for medical, surgical or hospital care as provided in § 25-13-608(1)(f), MCA. While the proceeds of an HSA may be used for other purposes upon payment of a statutory penalty, the Court determined that this is accounted for in the Montana statute, which provides an exemption only "*to the extent*" that the HSA funds are used for the described medical purposes. Both federal and Montana law restrict withdrawals from HSA accounts, and thus limit the permissible uses for the funds. Both impose penalties for other uses. 26 U.S.C. § 223; §§ 15-61-203, -205, MCA. In the present case, as in *Berdecia-Rodriguez,* the Debtor has applied the HSA funds "exclusively to qualified medical expenses and for no other purpose." The Bankruptcy Court held that the debtor was entitled to an exemption

for the HSA funds "so long as" he applies them to qualified medical expenses under § 25-13-608(1)(f), MCA.

¶13 The Bankruptcy Court's construction of the exemption in § 25-13-608(1)(f), MCA, furthers the established principles of Montana law, noted above, to liberally construe specific statutory exemptions in favor of the debtor. While the funds might be used for a non-medical purpose, such use is subject to a statutory penalty. 26 U.S.C. § 223(f)(2), (4). Any such use would disqualify those funds from exemption and, under *Berdecia-Rodriguez*, the Trustee could recover those funds from the Debtor. In addition, under Montana law a false claim to funds in an HSA is subject to criminal penalties for theft. Section 15-61-205, MCA. The Bankruptcy Court can impose such safeguards as it deems prudent to monitor an exempt fund to ensure that the money is used for a proper purpose consistent with the statutory restriction.

¶14 We note that the Montana Legislature in its last session also amended § 25-13-608, MCA. Senate Bill No. 216, signed by the Governor on May 4, 2017 (Ch. 298, Laws of 2017). That legislation specifically adds contributions to certain health or medical savings accounts to the list of exemptions a judgment debtor is allowed to exclude from execution. That enactment provides much more clarification of how and under what circumstances an HSA will be exempt, and it will supersede the applicability of § 25-13-608(1)(f), MCA, to such accounts. We construe the existing language of the statute for application to this case, which arose before the recent amendment.

## CONCLUSION

¶15    We hold that a Debtor may claim an exemption for a health savings account (HSA) pursuant to § 25-13-608(1)(f), MCA, to the extent that it is "used or will be used to pay for the care" described in the statute.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR

Justice Jim Rice, dissenting.

¶16    In *Archer*, virtually the same arguments were made as here. Archer suffered from significant, ongoing medical expenses. The proceeds from a sales contract he held were "used exclusively to pay for [Archer's] end-of-life medical, surgical or hospital care and medications." *Archer*, ¶ 6. Like Giacometto argues here, Archer argued that the proceeds should be exempted under § 25-13-608(1)(f), MCA, "to the extent those proceeds are used for [his] medical care," and because "exemption statutes must be liberally construed." *Archer*, ¶¶ 9, 14.

¶17    We rejected those arguments, and held that the term "benefits" under § 25-13-608(1)(f), MCA, "includes only those payments to a debtor which are *expressly earmarked* for the *sole purpose* of paying medical, surgical or hospital bills." *Archer*, ¶ 19

8

(emphasis added). Because there were "no contractual restrictions" on Archer's use of the proceeds that would prohibit him from using the funds for something other than the "sole purpose" of medical costs, we held that the proceeds could not be exempted under § 25-13-608(1)(f), MCA. We also noted that the principle of liberal construction of bankruptcy exemptions "may not disregard plain legislative mandate." *Archer*, ¶ 15.

¶18 The Court plows much ground in an effort to distinguish the HSA here from the contract in *Archer*, but misses the most salient point: that the account holder of an HSA is no more required to spend the funds on medical care than the contract holder was in *Archer*. Quite simply, the funds in an HSA are not "expressly earmarked for the sole purpose" of medical costs. *Archer*, ¶ 19. Indeed, the Court's emphasis on the State and Federal regulation of the account is mere window-dressing because it is nonetheless expressly permissible for Giacometto to use the account for any purpose of his choosing. *See* § 15-61-203(1), MCA (an account holder "may withdraw money from the individual's medical care savings account for any purpose other than an eligible medical expense . . . ."). The true distinguishing point between the Court's decision and our decision in *Archer* is that the account here has "health" in its title, while the contract in *Archer* did not.

¶19 The account holder's ability to spend the funds in the HSA for any purpose necessitates the adoption of a new rule by the Court for later "disqualification" of the exemption if the money is spent for other purposes. Such "disqualification" could require the bankruptcy trustee to chase down debtors years after cases have closed, when the trustee discovers that the HSAs have "lost" their exempt status. The Court has, in effect, legislated a special process for administration of an exemption, one that could be elongated over

9

many years. This should be a legislative call. "'In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.' Section 1-2-101, MCA." *In re Golz*, 2015 MT 318, ¶ 13, 381 Mont. 385, 360 P.3d 1142 (holding that inherited IRAs are not exempt from the bankruptcy estate).

¶20 Busy with its own legislating, the Court overlooks the obvious implication of the real Legislature's recent enactment of SB 216 in the 2017 Legislative Session. The bill was entitled "An Act Exempting . . . Medical Savings Accounts from Bankruptcy," creating for the first time an exemption for HSAs. As we are to presume "that the Legislature does not pass meaningless or useless legislation," *Lucas Ranch, Inc. v. Mont. Dep't of Revenue*, 2015 MT 115, ¶ 15, 379 Mont. 28, 347 P.3d 1249, the effect of the legislation was to change the prior status of HSAs. This effect is confirmed by SB 216's corresponding repeal of § 15-61-202(7), MCA, which, as the Trustee notes, was a prior statutory indication that such accounts would *not* be considered exempt in a bankruptcy proceeding. The repeal of this section was necessary to make HSAs exempt in bankruptcy proceedings.

¶21 Based upon our precedent interpreting the subject statutes, I would answer the question in the negative.

/S/ JIM RICE

10